UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

JARED J. WILSON,

               Petitioner,

    v.

KEITH YORDY, Warden,

               Respondent.

Case No. 1:17-cv-00055-DCN

**MEMORANDUM DECISION AND ORDER**

Pending before the Court is a Petition for Writ of Habeas Corpus filed by Idaho state prisoner Jared J. Wilson ("Petitioner" or "Wilson"), challenging Petitioner's Gem County convictions on two counts of lewd conduct with a minor under the age of sixteen. *Dkt. 3.* The Petition is now fully briefed and ripe for adjudication. *Dkt. 11, 13.* The Court takes judicial notice of the records from Petitioner's state court proceedings, which have been lodged by Respondent. *See Dkt. 10*; Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 n.1 (9th Cir. 2006).

Having carefully reviewed the record in this matter, including the state court record, the Court concludes that oral argument is unnecessary. *See* D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order denying habeas corpus relief.

## BACKGROUND

In the Third Judicial District Court in Gem County, Idaho, Petitioner was charged with two counts of violating Idaho's Sexual Offender Registration Notification and Community Right-to-Know Act by (1) failing to register as a sex offender and (2) failing

to provide a notice of a change of address.

In a separate case, Petitioner was also charged with two counts of lewd conduct with a minor under the age of sixteen. One of the lewd conduct counts alleged that Petitioner molested the victim at his home in Emmett. The other count alleged that Petitioner molested her while driving the victim between her home in Twin Falls and his home in Emmett. The state alleged that both lewd conduct crimes were committed "on or between the years 2006 and 2007," when the victim was seven and eight years of age. *State's Lodging A-3* at 416.

The cases were consolidated, with the agreement of Petitioner's trial counsel. Counsel's agreement was based on his belief that, if the cases were consolidated, Petitioner could not be charged with a persistent violator, or habitual offender, enhancement. That belief was incorrect, as the parties learned shortly before trial. Because Petitioner had other qualifying convictions, he was subject to the habitual offender enhancement regardless of whether the cases were consolidated or were tried separately. Petitioner's counsel later stated that his initial agreement to consolidate the cases might have been different if he had known about Petitioner's previous convictions.

After the prosecution ran a criminal history check and discovered the previous convictions, it suggested that it might consider dismissing the charges, then refiling them in new informations that included a habitual offender enhancement in each case. At a pretrial hearing, the prosecution agreed not to do so if Petitioner agreed to keep the cases consolidated and to go to trial as scheduled. Petitioner's counsel so agreed.

The jury convicted Petitioner on all four counts. He was sentenced to terms of ten years in prison on each of the registration/notification counts, and concurrent unified terms of life imprisonment, with ten years fixed, on each lewd conduct count. The Idaho Court of Appeals vacated the conviction for failing to register but affirmed the other convictions.[1] *State's Lodging B-8.*

Petitioner then pursued state post-conviction relief, asserting claims of ineffective assistance of counsel, as well as other claims that he does not raise in his federal Petition. *State's Lodging C-1* at 4-54. The state district court dismissed the post-conviction petition. *Id.* at 163-67.

On appeal from the dismissal of that petition, Petitioner raised two claims of ineffective assistance of trial counsel. First, he alleged that his trial counsel rendered ineffective assistance by failing to investigate Petitioner's criminal history before agreeing to consolidate the lewd conduct case with the registration/notification case. *State's Lodging B-3.* Such an investigation would have revealed that Petitioner could be charged with a habitual offender enhancement regardless of whether the cases were consolidated. This claim is asserted as Claim 1 of the instant Petition.

Second, Petitioner alleged that his counsel rendered ineffective assistance by failing to call certain witnesses and present certain other evidence. *Id.* This claim is presented as Claim 2 of the Petition.

---

[1] The instant Petition challenges only Petitioner's two lewd conduct convictions—not the failure-to-notify conviction.

The Idaho Court of Appeals affirmed the dismissal of the post-conviction petition. *State's Lodging D-6.* With respect to Claim 1, the court concluded that trial counsel's (1) initial agreement to consolidate the cases, and (2) later agreement to keep the cases consolidated, were tactical decisions and that, although the initial decision was based on ignorance, Petitioner had not shown that this initial decision played a role in the second strategic decision to keep the cases consolidated so as to avoid refiling of the charges with the addition of habitual offender enhancements. *Id.* at 5-6. As for Claim 2, the court determined that (1) counsel's decision not to present the evidence identified by Petitioner was a reasonable strategic decision, and (2) even if the evidence had been presented, it would not have altered the jury's verdicts. *Id.* at 6-9.

The instant Petition challenges the Idaho Court of Appeals' rejection of Claims 1 and 2.

## HABEAS CORPUS STANDARD OF LAW

Federal habeas corpus relief may be granted when a federal court determines that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). If the state court has adjudicated a claim on the merits, habeas relief is further limited by § 2254(d), as amended by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, federal habeas relief may be granted only where the state court's adjudication of the petitioner's claim:

> (1)    resulted in a decision that was contrary to, or
>         involved an unreasonable application of, clearly
>         established Federal law, as determined by the
>         Supreme Court of the United States; or

(2)    resulted in a decision that was based on an
       unreasonable determination of the facts in light
       of the evidence presented in the State court
       proceeding.

28 U.S.C. § 2254(d). "Deciding whether a state court's decision involved an

unreasonable application of federal law or was based on an unreasonable determination

of fact requires the federal habeas court to train its attention on the particular reasons—

both legal and factual—why state courts rejected a state prisoner's federal claims and to

give appropriate deference to that decision." *Wilson v. Sellers*, 138 S. Ct. 1188, 1191-92

(2018) (internal quotation marks and citations omitted).

When a party contests the state court's legal conclusions, including application of

the law to the facts, § 2254(d)(1) governs. That section consists of two alternative tests:

the "contrary to" test and the "unreasonable application" test.

Under the first test, a state court's decision is "contrary to" clearly established

federal law "if the state court applies a rule different from the governing law set forth in

[the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court]

[has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694

(2002). Under the second test, to satisfy the "unreasonable application" clause of

§ 2254(d)(1), the petitioner must show that the state court—although identifying "the

correct governing legal rule" from Supreme Court precedent—nonetheless "unreasonably

applie[d] it to the facts of the particular state prisoner's case." *Williams (Terry) v. Taylor*,

529 U.S. 362, 407 (2000). "Section 2254(d)(1) provides a remedy for instances in which

a state court unreasonably applies [Supreme Court] precedent; it does not require state

courts to extend that precedent or license federal courts to treat the failure to do so as error." *White v. Woodall*, 134 S. Ct. 1697, 1706 (2014) (emphasis omitted).

A federal court cannot grant habeas relief simply because it concludes in its independent judgment that the decision is incorrect or wrong; rather, the state court's application of federal law must be objectively unreasonable to warrant relief. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell*, 535 U.S. at 694. If there is any possibility that fair-minded jurists could disagree on the correctness of the state court's decision, then relief is not warranted under § 2254(d)(1). *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. To be entitled to habeas relief under § 2254(d)(1), "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

Though the source of clearly established federal law must come only from the holdings of the United States Supreme Court, circuit precedent may be persuasive authority for determining whether a state court decision is an unreasonable application of Supreme Court precedent. *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 2000). However, circuit law may not be used "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] Court has not announced." *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013).

"[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). Therefore, evidence that was not presented to the state court cannot be introduced on federal habeas review if a claim was adjudicated on the merits in state court and if the underlying factual determinations of the state court were reasonable. *See Murray v. Schriro*, 745 F.3d 984, 999-1000 (9th Cir. 2014); ("After *Pinholster*, a federal habeas court may consider new evidence only on de novo review, subject to the limitations of § 2254(e)(2)."); *Hurles v. Ryan*, 752 F.3d 768, 778 (9th Cir. 2014) ("If we determine, considering only the evidence before the state court, that the adjudication of a claim on the merits ... was based on an unreasonable determination of the facts, we evaluate the claim de novo, and we may consider evidence properly presented for the first time in federal court.").

To be eligible for relief under § 2254(d)(2), the petitioner must show that the state court decision was based upon factual determinations that were "unreasonable ... in light of the evidence presented in the State court proceeding." A "state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."). State court factual findings are presumed to be correct and are binding on

the federal court unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

If a petitioner satisfies § 2254(d)—either by showing that the state court's adjudication of the claim was contrary to, or an unreasonable application of, Supreme Court precedent or by establishing that the state court's factual findings were unreasonable—then the federal habeas court must review the petitioner's claim de novo, meaning without deference to the state court's decision. *Hurles*, 752 F.3d at 778. When considering a habeas claim de novo, a district court may, as in the pre-AEDPA era, draw from circuit precedent as well as Supreme Court precedent, limited only by the non-retroactivity rule of *Teague v. Lane*, 489 U.S. 288 (1989). Even on de novo review, however, so long as the state courts' factual findings are not unreasonable under § 2254(d)(2), the federal habeas court still must apply § 2254(e)(1)'s presumption of correctness to any such findings. *Pirtle v. Morgan*, 313 F.3d 1160, 1167-68 (9th Cir. 2002).

## DISCUSSION

### 1. Clearly-Established Law Governing Claims of Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution provides that a criminal defendant has a right to the effective assistance of counsel in his defense. The standard for ineffective assistance of counsel ("IAC") claims was set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). A petitioner asserting ineffective assistance of counsel must show that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and

(2) those errors "deprive[d] the defendant of a fair trial, a trial whose result is reliable."

*Id*. at 687. A petitioner must establish both deficient performance and prejudice to prove

an IAC claim. *Id.* at 697. On habeas review, the court may consider either prong of the

*Strickland* test first, or it may address both prongs, even if one prong is not satisfied and

would compel denial of the IAC claim. *Id.*

Whether an attorney's performance was deficient is judged against an objective

standard of reasonableness. *Id.* at 687-88. A reviewing court's inquiry into the

"reasonableness" of counsel's actions must not rely on hindsight:

> Judicial scrutiny of counsel's performance must be highly
> deferential. It is all too tempting for a defendant to second-
> guess counsel's assistance after conviction or adverse
> sentence, and it is all too easy for a court, examining
> counsel's defense after it has proved unsuccessful, to
> conclude that a particular act or omission of counsel was
> unreasonable. A fair assessment of attorney performance
> requires that every effort be made to eliminate the distorting
> effects of hindsight, to reconstruct the circumstances of
> counsel's challenged conduct, and to evaluate the conduct
> from counsel's perspective at the time. Because of the
> difficulties inherent in making the evaluation, a court must
> indulge a strong presumption that counsel's conduct falls
> within the wide range of reasonable professional assistance;
> that is, the defendant must overcome the presumption that,
> under the circumstances, the challenged action might be
> considered sound trial strategy. There are countless ways to
> provide effective assistance in any given case. Even the best
> criminal defense attorneys would not defend a particular
> client in the same way.

*Id.* at 689 (internal citations and quotation marks omitted).

Strategic decisions, such as the choice of which evidence to present, "are virtually

unchallengeable" if "made after thorough investigation of law and facts relevant to

plausible options." *Strickland*, 466 U.S. at 690. Moreover, an attorney who decides not to

investigate a potential defense theory is not ineffective so long as the decision to forego

investigation is itself objectively reasonable:

> [S]trategic choices made after less than complete
> investigation are reasonable precisely to the extent that
> reasonable professional judgments support the limitations on
> investigation. In other words, counsel has a duty to make
> reasonable investigations or to make a reasonable decision
> that makes particular investigations unnecessary. In any
> ineffectiveness case, a particular decision not to investigate
> must be directly assessed for reasonableness in all the
> circumstances, applying a heavy measure of deference to
> counsel's judgments.

*Id.* at 690-91. That is, "the duty to investigate does not force defense lawyers to scour the

globe on the off chance something will turn up; reasonably diligent counsel may draw a

line when they have good reason to think further investigation would be a waste."

*Rompilla v. Beard*, 545 U.S. 374, 383 (2005). Further, counsel is not deficient in an area

where an investigation would not have been fruitful for the defense.

The Ninth Circuit has provided some insight into the *Strickland* standard when

evaluating an attorney's "strategy calls." These cases are instructive in the Court's

assessment of whether the state court reasonably applied *Strickland*. *See Duhaime*, 200

F.3d at 600. First, tactical decisions do not constitute IAC simply because, in retrospect,

better tactics are known to have been available. *Bashor v. Risley*, 730 F.2d 1228, 1241

(9th Cir. 1984). Second, a mere difference of opinion as to tactics does not render

counsel's assistance ineffective. *United States v. Mayo*, 646 F.2d 369, 375 (9th Cir.

1981). Third, "counsel's investigation must determine trial strategy, not the other way

around." *Weeden v. Johnson*, 854 F.3d 1063, 1070 (9th Cir. 2017); *see also id.*

("Weeden's counsel could not have reasonably concluded that obtaining a psychological

examination would conflict with his trial strategy without first knowing what such an examination would reveal.").

If a petitioner shows that counsel's performance was deficient, the next step is the prejudice analysis. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. To satisfy the prejudice standard, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. As the *Strickland* Court instructed:

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

*Id.* at 695-96. To constitute *Strickland* prejudice, "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. 86 at 112.

The foregoing standard, giving deference to counsel's decision-making, is the de novo standard of review. Another layer of deference—to the state court decision—is

afforded under AEDPA. In giving guidance to district courts reviewing *Strickland* claims

on habeas corpus review, the United States Supreme Court explained:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." *Williams*, *supra*, at 410, 120 S. Ct. 1495. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Richter*, 562 U.S. at 101. That is, when evaluating an IAC claim under § 2254(d), this

Court's review of that claim must be "doubly deferential." *Pinholster*, 563 U.S. at 190

(internal quotation marks omitted).

## 2.      Petitioner Is Not Entitled to Relief on Claim 1

In Claim 1, Petitioner asserts that his trial counsel rendered ineffective assistance

in initially agreeing to consolidate the lewd conduct charges with the

registration/notification charges without first investigating Petitioner's criminal

background.[2] If counsel had investigated that background, counsel would have learned

---

[2] In his Reply in support of his Petition, Petitioner suggests that the prosecution committed a *Brady* violation "by waiting to bring forth his prior criminal history just before trial." *Dkt. 13* at 3; *see Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding that the prosecution must disclose evidence favorable to the defense that is material to guilt or punishment, regardless of whether the defense has requested such evidence). Setting aside the fact that Petitioner does not assert a *Brady* claim in his Petition, this argument fails. Petitioner's criminal history is not *Brady* evidence because the fact that Petitioner was convicted of numerous prior felonies was not suppressed by the prosecution—Petitioner, without question, already knew he had been so convicted.

that Petitioner already qualified for a habitual offender enhancement—even if the cases were not consolidated. According to Petitioner, a properly-informed attorney would have insisted that the cases remain separate, thereby lessening the risk that the jury would convict based solely on Petitioner's propensity to commit sex crimes.

### A.    Relevant Facts

The lewd conduct charges and the registration/notification charges against Petitioner were initially filed in two separate cases. The issue of consolidating the cases for trial first arose sometime prior to a December 13, 2010 hearing, when the prosecutor informed Petitioner's counsel that the state was considering moving to consolidate the cases. In addressing this possibility, Petitioner's counsel told the trial court:

> Judge, one of the other issues that would come about if my client is charged on a consolidated pleading is the fact that the good side is that the State would not be allowed to file an enhancement for habitual status offender, exposing my client to a mandatory minimum of five years up to natural life, because [of] the fact that if there are any convictions, they'd be on the same information.

*State's Lodging A-5* at 6. The state then formally moved to consolidate the cases, and the court took the motion under advisement. *Id*. at 8-9.

At a later hearing, Petitioner's counsel stipulated to the consolidation of the two cases. Defense counsel stated that there was an upside and a downside to consolidation. In explaining to the trial court his decision to stipulate, Petitioner's counsel stated, "[P]art of the problem that we had in this case was we didn't want to try the cases consecutively and expose my client to the habitual offender enhancement." *State's Lodging A-4* at 10.

Thus, as of the date of that hearing—January 24, 2011—Petitioner's counsel was still under the impression that there would be a benefit to Petitioner if the cases were consolidated. The primary detriment to consolidation, of course, was that the jury would hear evidence not only that Petitioner committed lewd conduct, but also that he had failed to register as a sex offender—that is, the jury would know that Petitioner had previously been convicted of a registrable sex offense.[3] Such knowledge would create a risk that the jury would convict on the lewd conduct charges based on the fact that Petitioner had committed a previous sex offense and, therefore, had a propensity to commit sex crimes—rather than convicting because the jury found Petitioner guilty of lewd conduct beyond a reasonable doubt. If the trials remained separate, the jury in the lewd conduct case would not have known that Petitioner had previously been convicted of a sex offense.

However, believing that the benefit of avoiding a habitual offender enhancement outweighed that detriment, Petitioner's counsel made the strategic decision to agree to consolidate the cases. As the Idaho Court of Appeals later determined, that decision was based on ignorance, due to counsel's lack of adequate investigation.

About a week before trial, Petitioner's counsel realized—after the prosecution's background check—that Petitioner was already subject to being charged with a habitual offender enhancement whether or not the cases were consolidated. At a hearing the day

---

[3] Petitioner's counsel initially identified a different detriment to consolidation: that the state could object to credit for time served. *State's Lodging A-5* at 6. However, counsel immediately recognized that this potential detriment to consolidation was not truly a concern because the state represented that it would not object to any such credit. *Id.*

before trial, Petitioner's counsel raised the issue to the court:

> Judge, it's my understanding that the State's considering trying to add the habitual offender on both of the cases which would expose my client to a mandatory minimum of five years up to actual life on all of the counts. Judge, obviously when we were making our determinations on having these matters consolidated, it was a situation where we didn't believe that my client was currently exposed to the habitual offender enhancement which could have been filed.

> Judge, last week the State had discovered when they did a background check, because it had never previously been done, that my client has actually quite a few number of felony convictions here in the state of Idaho. I believe he has four prior felony convictions ranging from driving without privileges to NSF check, forgery, and burglary.

> Apparently, Judge, *if we had known that, we may have come up with a different position on whether or not to consolidate these matters*. Obviously when we were—of primary concern, trying to avoid a situation where the State could enhance and file the habitual. *One of the things we had to weigh was the likelihood or the possibility that the court would allow in 404(b) evidence that may not necessarily have come in on the lewd conduct case.*

> Judge, obviously *in the failure to register case, one of the primary pieces of proof that the State has to put on is the fact that my client has a registration requirement because of a prior felony conviction for a sex offense. So Judge, we knew that it was coming in on that case. The question was, was it going to come in on the lewd conduct case and what were the pros and cons.*

> Judge, in weighing the pros and cons at that point, we didn't want to face because of consecutive trials the exposure to the habitual because then all of a sudden we'd changed the registration case from a maximum of five years[4] to a minimum of five years up to natural life.

---

[4] The legislature had recently increased the statutory maximum punishment for the registration and notification charges, so that at the time of Petitioner's offenses, the maximum was actually ten years, not five. *See State's Lodging A-6* at 28; Idaho Code § 18-8311.

> Judge, at this point, part of the reason that the State
> agreed or we allowed the State to [consolidate the cases] was
> to avoid the habitual. But if the State is—

*State's Lodging A-6* at 25-27 (emphasis added). The trial court interjected and noted that

no motion for severance was pending. The court asked whether severance was "even an

issue." *Id*. at 27. The prosecutor replied:

> It's not an issue, Your Honor. If we—I've told
> [defense counsel] that we're not filing a habitual. *If these*
> *cases are tried together and go forward to trial tomorrow,*
> *we're not moving to add the habitual.... If we took that route,*
> *what we would do ... is dismiss and refile to separate the*
> *cases and go forward that way*. So it's not an issue for trial
> tomorrow.

*Id*. (emphasis added).

The trial court agreed with the prosecution regarding its discretion to dismiss and

refile, stating, "the State would always have the opportunity to—or the option of

dismissing these and refiling, but that isn't anything in terms of adding it in for

tomorrow." *Id.* Petitioner's counsel did not object at any point in this exchange nor did he

move to sever, thereby choosing not to object to keeping the cases consolidated and the

trial date as scheduled.

**B.      The Idaho Court of Appeals' Rejection of Claim 1 Was Reasonable under**
**AEDPA**

The Idaho Court of Appeals held that trial counsel's initial decision to agree to

consolidate, without investigating Petitioner's criminal history, constituted deficient

performance. *State's Lodging D-6* at 5-6. This Court agrees. Counsel's goal—to avoid a

habitual offender enhancement, which would increase the statutory maximum

punishment on the registration/notification charges to life in prison—was reasonable,[5] but his decision to agree to consolidate without first knowing his client's criminal history, in order to reach that goal, was not. *See Weeden*, 854 F.3d at 1070 ("[C]ounsel's investigation must determine trial strategy, not the other way around.").

However, the state court determined that, despite the unreasonableness of counsel's initial agreement to consolidate, Petitioner had not shown prejudice as required by *Strickland*:

> [T]he record indicates that on two occasions Wilson stipulated to the consolidation of his cases in an effort to avoid a persistent violator enhancement. The first stipulation was predicated on trial counsel's erroneous belief that Wilson would be ineligible for the enhancement if both cases were tried together instead of consecutively. The State later discovered that Wilson had multiple prior felony convictions, meaning that he could have been charged as a persistent violator regardless of whether the cases were consolidated. The second stipulation occurred after Wilson's criminal record was revealed to trial counsel. *As noted by the district court, the State had the option to include the enhancement based on Wilson's prior criminal record*. However, trial counsel and the State agreed that, despite Wilson's eligibility for the enhancement, if the cases continued to remain consolidated and went to trial as scheduled, the State would not seek the persistent violator enhancement. Wilson, through his trial counsel, agreed that the cases would remain consolidated.
>
> *Although trial counsel initially was under the erroneous belief that Wilson was not subject to the persistent violator enhancement, Wilson has not shown that this error played any role in the second stipulation to consolidate the cases. Rather, trial counsel's decision to keep the cases consolidated was strategic in nature, based on the relevant*

---

[5] That Petitioner was already exposed to a maximum punishment of life in prison on the lewd conduct charges does not render counsel's concern about the habitual offender enhancement unreasonable or superfluous. Four potential life sentences are substantially different from two.

> *facts, and ensured that Wilson did not face a persistent*
> *violator enhancement, which was the original strategic*
> *reason for agreeing to case consolidation.* Wilson has failed
> to show that the second stipulation was based on inadequate
> preparation, ignorance of relevant law, or other shortcomings
> capable of objective evaluation. To the contrary, Wilson
> endorsed the strategy of avoiding the persistent violator
> enhancement. Accordingly, Wilson has failed to show that the
> district court erred in summarily dismissing Wilson's
> ineffective assistance of counsel claim for consolidating his
> criminal cases.

*Id.* (emphasis added). In essence, the court of appeals concluded Petitioner failed to show

a reasonable probability that trial counsel would have objected to consolidation—forcing

the prosecution to dismiss and refile, in which case it could charge the habitual offender

enhancement in *both* cases—if counsel had known from the beginning that Petitioner

would be subject to the enhancement even in a consolidated proceeding.

The decision of the Idaho Court of Appeals on Claim 1 was not contrary to, or an

unreasonable application of, *Strickland*, nor was it based on an unreasonable

determination of the facts. The State always had the ability to dismiss the charges—even

on the eve of trial—and refile two new cases, with two new charging documents, *each*

including the habitual offender enhancement. Petitioner's counsel's initial agreement to

consolidate, though an unreasonable tactical decision because it was based on inadequate

investigation, did not change that fact. If Petitioner had objected to consolidation, either

at the initial hearing or at the hearing the day before trial, or both, the prosecution easily

could have—and implied at the last pretrial hearing that it would have—dismissed and

refiled rather than continue the trial. Counsel's second agreement to keep the cases

consolidated did indeed keep Petitioner from being charged with the habitual offender

enhancement.

Moreover, Petitioner may be able to establish prejudice *as to his ability to have separate trials*, but that is not the question. Instead, to establish ineffective assistance based on trial counsel's initial agreement to consolidate, Petitioner must establish prejudice *as to the ultimate verdict on the lewd conduct charges*. He has not done so, even under de novo review.

The danger of consolidated trials in this case was the risk of conviction based on propensity evidence—the risk that the jury would believe that because Petitioner did it before, he likely did it again. Thus, Petitioner must show a reasonable probability that the jury convicted him of the lewd conduct charges *not* because the prosecution proved Petitioner's guilt on those charges beyond a reasonable doubt, but because the evidence proving the registration/notification charges showed a propensity to commit lewd conduct. Stated another way, Petitioner must show a reasonable probability that—without any of the failure-to-register or failure-to-notify evidence—the jury would have found Petitioner not guilty of the lewd conduct charges.

But Petitioner has not pointed to anything in the trial record supporting a conclusion that the jury convicted based on propensity evidence, rather than because the prosecution proved beyond a reasonable doubt that Petitioner committed two counts of lewd conduct. Instead, Petitioner simply states, in a conclusory fashion, that the jury treated "proof of one offense as corroborative of the other." *Dkt. 13* at 4. Such a statement is insufficient to meet Petitioner's burden of showing a reasonable probability of a different result, much less the even heavier burden of showing that the state court's

decision was unreasonable under § 2254(d). *See Richter*, 562 U.S. at 101.

For the above reasons, the Court will deny Claim 1 of the Petition.

**3.      Petitioner Is Not Entitled to Relief on Claim 2**

In Claim 2, Petitioner asserts that trial counsel should have called four witnesses—all members of Petitioner's family—to testify on Petitioner's behalf. Claim 2 also asserts that, with respect to the charge of lewd conduct committed in Petitioner's vehicle, trial counsel should have presented evidence that Petitioner had an ankle injury and did not have a valid driver's license during the relevant time frame.

*A.      Relevant Facts*

According to the evidence submitted with Petitioner's post-conviction petition, Petitioner's father would have testified that (1) somebody else was "usually" with Petitioner and the victim during the drive between Twin Falls and Emmett because Petitioner's driver's license had been suspended and because Petitioner had a leg injury, (2) the victim initially denied the sexual misconduct allegations, (3) Petitioner's father never witnessed any inappropriate behavior, and (4) the victim had been sexually abused by her brother and stepfather. *State's Lodging C-1* at 55-57. Petitioner's mother would have offered similar testimony; she also would have stated that Petitioner had leased his home to his sister and was not living there during the relevant time period. *Id*. at 58-60. Petitioner's brother would have testified that the victim often talked about how much she loved Petitioner, that the victim would have told Petitioner's brother if Petitioner had abused her, and that the victim's brother molested her. *Id*. at 61-62. Finally, Petitioner's daughter would have testified that she never witnessed any inappropriate behavior

between Petitioner and the victim and that the victim had told her Petitioner had not

molested her. *Id*. at 63.

Also included with the post-conviction petition was evidence that Petitioner's

driver's license had been suspended during part of 2006 and 2007 and that Petitioner had

an ankle injury during the relevant time period. *Id*. at 65-71. According to Petitioner, this

evidence would have established that he could not have driven a car during the time when

he was accused of molesting the victim while traveling between Twin Falls and Emmett.

### B.     *The State Court's Rejection of Claim 2 Was Reasonable under AEDPA*

The Idaho Court of Appeals determined that trial counsel's decision not to present

the above evidence was reasonable and that, even if the evidence had been presented, it

would not have altered the jury's verdicts:

> In this case, the State was required to show that Wilson
> sexually abused the victim at least once for each count, during
> the times and at the locations alleged. The victim offered
> testimony that Wilson sexually abused her in the car and the
> house, but only when they were alone. *The witness affidavits
> cover only a portion of the alleged timeframe of the sexual
> abuse and only the times when the witness was present with
> Wilson. Even if Wilson was usually accompanied by another
> adult who never observed any abuse, it does not follow that
> such evidence would show that Wilson did not commit the
> alleged sexual abuse at a time when Wilson and the victim
> were alone*. Therefore, even if the purported testimony had
> been presented, it would not have proved that no crime was
> committed.
>
> Furthermore, we note that *there is a tactical basis for
> not calling these witnesses* and presenting the testimony
> proposed by the Wilson. Trial counsel's strategic decision
> regarding whether to call witnesses will not be second-
> guessed on appeal unless the decision was the product of
> inadequate preparation, ignorance of relevant law, or some
> other shortcoming capable of objective evaluation. *Caldwell*

*v. State*, 159 Idaho 233, 240, 358 P.3d 794, 801 (Ct. App. 2015). As discussed, *the proposed testimony only accounts for a portion of the alleged timeframe. Presentation of this evidence would be subject to cross-examination by the State, who could then elicit testimony for the jury's consideration indicating how much opportunity Wilson had to commit the crimes during the alleged timeframe.* Moreover, as Wilson notes, the record shows that *trial counsel, during cross-examination of State witnesses, inquired into the same topics that Wilson alleges the witnesses were to have offered testimony*.

As for the medical records, these documents indicate that Wilson had instances of injury to his leg in both 2006 and 2007. *Such evidence does not provide proof that Wilson was either physically prohibited from driving or that he followed the medical advice for the entire time alleged in the two counts of lewd conduct with a minor. Similarly, Wilson's driving records only indicate that he was legally prohibited from driving for a portion of the alleged time period. Evidence of Wilson's driving privileges suspension and reinstatement does not show that he did not drive a car at any time during the alleged timeframe.*

The affidavit and records evidence provided by Wilson fail to show a complete alibi, impossibility, or actual innocence. *See, e.g., Roman*, 125 Idaho at 650, 873 P.2d at 904 (holding that the petitioner had failed to show that the testimony of these witnesses would have raised a viable alibi defense to present to the jury). It is not enough to show that such evidence was relevant or that some other attorney would have presented the evidence at trial. Rather, Wilson was required to show that trial counsel's decision—not to present the purported testimony and records evidence—was based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. Wilson has not done so and, consequently, *failed to rebut the presumption that trial counsel's performance fell within the wide range of constitutionally effective assistance. Moreover, Wilson has failed to show that the purported testimony and evidence would have changed the outcome of his trial.*

*State's Lodging D-6* at 8-9 (emphasis added).

This decision was eminently reasonable. The evidence that Petitioner claims counsel should have presented was of marginal relevance. The potential witnesses' testimony—which would have been viewed with a healthy dose of skepticism by the jury, given that all four witnesses are close relatives of Petitioner—would not have shown that Petitioner did not sexually abuse the victim and would have allowed the state to explore all of the times that Petitioner could, indeed, have committed the crimes. The evidence of Petitioner's license suspension and ankle injury is even less relevant, as none of it would have shown that Petitioner did not, or could not, drive a vehicle during the time period alleged in the information.

The double deference that applies when reviewing ineffective assistance claims in habeas proceedings leaves no room for this Court to second-guess, with the benefit of hindsight, the tactical decisions of Petitioner's counsel regarding the presentation of these witnesses and the other evidence. *Pinholster*, 131 S. Ct. at 1403; *Strickland*, 466 U.S. at 689. Moreover, even if counsel had performed deficiently by failing to present the evidence, Petitioner has not shown prejudice from that performance. Thus, the Court will deny Claim 2.

## CONCLUSION

For the foregoing reasons, the Court concludes that the Idaho Court of Appeals' rejection of Petitioner's claims was not contrary to or an unreasonable application of clearly-established Supreme Court precedent, nor was it based on an unreasonable determination of the facts. Therefore, Petitioner has not established that he is entitled to habeas relief under 28 U.S.C. § 2254(d).

# ORDER

**IT IS ORDERED:**

1.  The Petition for Writ of Habeas Corpus (Dkt. 3) is DENIED, this entire action is DISMISSED with prejudice, and judgment will be entered in favor of Respondent.

2.  The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner wishes to appeal, he must file a timely notice of appeal with the Clerk of Court. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED: February 13, 2019

David C. Nye
Chief U.S. District Court Judge